UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEVAN FLAX | No. 24 CR 462<br><br>Judge Jeffrey I. Cummings |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Over the course of a three-day period in November 2023, defendant Flax went on an armed robbery spree. Flax brazenly robbed two postal carriers delivering mail and a pizza delivery driver. Flax brandished a gun in two of the robberies. When he was approached by law enforcement, Flax fled, dropping a loaded Smith & Wesson pistol on the ground.

The gravity of Flax's actions, as well as the need to protect the public and deter Flax and others from similar conduct, warrant a significant sentence. The government therefore requests that the Court sentence defendant to 155 months' imprisonment. A 155-month sentence will provide justice for defendant's victims and is sufficient but not greater than necessary to satisfy the goals set forth in the Sentencing Guidelines and 18 U.S.C. § 3553(a).

## I. PROCEDURAL HISTORY

On October 2, 2024, a federal grand jury returned an indictment charging defendant Devan Flax with robbery of property of the United States, in violation of Title 18, United States Code, Section 2114(a) (Counts One and Five); theft of keys suited to locks adopted by the United States Postal Service, in violation of Title 18,

United States Code, Section 1704 (Counts Two and Seven); obstructing, delaying, and affecting commerce, and the movement of articles and commodities in commerce, by robbery, in violation of Title 18, United States Code, Section 1951(a) (Count Three); using, carrying, and brandishing a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, in violation of Title 18, United States Code, Section 924(c)(1)(A) (Counts Four and Six); and knowing possession of keys suited to locks adopted by the United States Postal Service, in violation of Title 18, United States Code, Section 1704 (Counts Eight and Nine). Dkt. 1.

On April 21, 2026, defendant pled guilty to Counts One, Three, Four, and Five of the indictment. Dkt. 54-55. Defendant is scheduled to be sentenced by the Honorable Jeffrey I. Cummings on September 8, 2026, at 1:00 p.m. Dkt. 61.

## II. GUIDELINES CALCULATIONS

The government agrees with defendant that a three-level enhancement pursuant to Guideline § 3A2.1(a) is inapplicable here given the application note commentary. Specifically, Application Note 3 to Guideline § 3A2.1(a) states that "[t]his adjustment would not apply in the case of a robbery of a postal employee because the offense guideline for robbery contains an enhancement (§ 2B3.1(b)(1)) that takes such conduct into account." The offense level calculated by the Probation Office includes a two-point adjustment pursuant to § 2B3.1(b)(1) because "the property of a … post office was taken." Accordingly, the 3-point adjustment under § 3A2.1(a) does not apply, and the total adjusted offense level is 25.

The government agrees with the criminal history calculations set forth in the PSR (PSR ¶ 60), and asserts that defendant has zero criminal history points, and his criminal history category is I.

With a total offense level of 25 and a criminal history category of I, the advisory sentencing guidelines range is 57 to 71 months' imprisonment on Counts One, Three and Five, in addition to any supervised release, fine, and restitution the Court may impose. Defendant is also subject to a mandatory minimum sentence of 84 months on Count Four, which must be served consecutively to the sentence imposed on Counts One, Three, and Five. *Id.* ¶ 120.

## III. THE SECTION 3553(a) FACTORS SUPPORT A SENTENCE OF 155 MONTHS' IMPRISONMENT

The Sentencing Guidelines provide a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). Here, the Guidelines range is high. But it is high for a reason. It is high because defendant threatened the lives of postal workers who were doing their jobs in broad daylight. It is high because defendant committed violent and dangerous crimes that put several innocent lives in peril, and then fled from officers while in possession of a loaded gun. In short, the Guidelines range is high, but a sentence of 155 months is appropriate given defendant's complete disregard for human life, his escalating criminal behavior, the need to protect the public, and the need to deter defendant and others from committing similar offenses.

### A. The Nature and Circumstances of the Offense Justify a Significant Sentence

The seriousness of defendant's offense cannot be overstated and alone warrants a significant period of incarceration. Defendant robbed a postal worker and a pizza delivery driver at gunpoint. "A robber with a loaded gun . . . places lives at risk because of the prosect that, should the need or impulse arise, he will commit murder." *United States v. Ray*, 21 F.3d 1134, 1141 (D.C. Cir. 1994). By brandishing a firearm, a robber "has empowered himself to turn the scene violent at will." *Id*. "His threat not only magnifies the chances that he will do just that if anyone gets in his way but also increases the likelihood of a violent response." *Id*. As the Seventh Circuit noted, offenses involving guns are categorically more dangerous than others: "Once the gun is in the defendant's hands he need only pull the trigger, an act which can be completed in a split second and which is controlled and influenced by nothing more than the defendant's whim." *United States v. Mathews*, 520 F.3d 806, 809 (7th Cir. 2008) (quoting *United States v. Lane*, 267 F.3d 715, 718 (7th Cir. 2001)).

Here, defendant's armed robberies epitomize the risk described by the Seventh Circuit. Defendant willingly risked getting into a deadly shootout for the possible windfall of postal keys and pizza delivery money. Defendant's crimes were brazen and violent. Motivated only by his own greed, defendant showed a complete disregard for human life. A significant sentence is necessary to ensure that defendant never again commits a violent crime and puts innocent lives at risk. When considering only defendant's extreme conduct in this case, a sentence within the advisory Guidelines range would be easily justifiable.

### B. A Significant Sentence is Necessary to Afford Adequate General Deterrence

"Sentencing judges must consider, among other things, the need for a sentence 'to afford adequate deterrence to criminal conduct.'" *United States v. Arroyo*, 75 F.4th 705, 708 (7th Cir. 2023), quoting 18 U.S.C. § 3553(a)(2)(B). "The idea of general deterrence, put simply, is that the longer the sentence, the more it will discourage similar criminal conduct by others." *Id*.

A significant sentence is warranted here to afford adequate deterrence for the public. Defendant's robbery spree occurred in public places and jeopardized the work of postal carriers. It is important to send a message to the community that although postal keys hold the allure of being highly lucrative targets for theft, theft of those keys carries stiff consequences that outweigh any prospect of personal gain. "General deterrence is, after all, an economic theory of punishment: 'Where the profits to be made from violating a law are higher, the penalty needs to be correspondingly higher to achieve the same amount of deterrence.'" *Arroyo*, 75 F.4th at 708, quoting *United States v. Cavera*, 550 F.3d 180, 196 (2d Cir. 2008). Unlike an impulsive shooting resulting from an argument, armed robberies are pre-planned and lucrative, and a significant sentence will deter future potential robbers who may believe the risks of such a robbery are worth the potential reward.

### C. A 155-Month Sentence Will Address Defendant's History and Characteristics While Providing Just Punishment, Affording Adequate Specific Deterrence, and Protecting the Public

Defendant's history and individual characteristics offer both aggravation and mitigation. Defendant was on pretrial release for burglary of a Walgreens when he

committed the instant offenses. PSR ¶ 62. According to the PSR, Flax jumped over the counter and demanded OxyContin and Xanax from the pharmacy operations manager. After taking Xanax, amoxicillin, and hydrocodone tablets from the store, Flax jumped into a stranger's car and instructed her to flee from police. Flax threw a gun out of the car window during the chase.

It is extremely concerning that at just 20 years old, defendant's criminal history escalated rapidly from theft of a Walgreens—to which defendant brought a gun— to armed robbery of postal workers in broad daylight in the instant case.

Defendant's history does offer some mitigation. He was young when he committed this crime, and until the age of 19, he avoided criminal conduct. He also had a difficult childhood. His father was not present in his life, and he spent time in foster care. PSR ¶ 77. In addition, the defendant reported a history of substance abuse of prescription opioids, marijuana, and alcohol. PSR ¶¶ 94-96.

Ultimately, defendant's youth and relatively limited criminal history does offer some mitigation and a potential for turning his life around. But defendant's escalating criminal history raises a significant concern that defendant will recidivate upon his release. Defendant was just 20 years old when he committed the instant offenses and will be 22 years old at the time of his sentencing. According to the United States Sentencing Commission's report *Youthful Offenders in the Federal System*, youthful offenders have the highest recidivism rate of all federal offenders, with

defendants sentenced between ages 21 and 25 having a 65.6% recidivism rate.[1] Because of the significant risk that defendant will return to criminal activity upon his release at a relatively young age and the need to ensure he ages out of his dangerous criminal conduct, a sentence of 155 months is needed in order to adequately deter defendant.

## IV. SUPERVISED RELEASE

The government agrees with Probation's recommendation that the Court impose a period of supervised release of three years. The government agrees with the supervised release conditions set forth in the PSR, which are narrowly tailored to facilitate supervision by the probation officer, deter the defendant from future crimes, support defendant's rehabilitation and reintegration into the community, and ensure that he is engaged in lawful pursuits rather than criminal activity. Given defendant's history and characteristics, his offense conduct, and the purposes of sentencing set forth in 18 U.S.C. §§ 3553 and 3583, the government joins Probation in requesting that the defendant be required to comply with the conditions of supervised release set forth in the PSR.

## V. RESTITUTION

Pursuant to 18 U.S.C. § 3663A, restitution is mandatory in this case. In his plea agreement, defendant agreed to pay restitution in an amount determined by the

[1] United States Sentencing Commission, *Youthful Offenders in the Federal System* (May 25, 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf, at 49 (last accessed April 18, 2025).

Court at sentencing. However, because the postal keys stolen by defendant were recovered, the government is not seeking restitution in this case.

## VI. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to 155 months' imprisonment, to be followed by three years of supervised release. Such a sentence is sufficient, but not greater than necessary, to satisfy the 18 U.S.C. § 3553(a) sentencing factors.

Respectfully submitted,
ANDREW S. BOUTROS
United States Attorney

By: *_/s/ Emily C.R. Vermylen_*
EMILY C.R. VERMYLEN
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604